IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE HUGHES, as Administrator of the Estate of Edwin Dewayne Moss, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-312-RAH [WO] |
| DARIAN K. LOCURE, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

According to the Third Amended Complaint, on January 19, 2021, Edwin Dewayne Moss was a passenger in a vehicle that was suddenly struck by an oncoming sheriff's office vehicle driven by Macon County Deputy Sheriff Darian K. Locure, who was driving in excess of 70 mph in a 25-mph zone with his lights off in the dark and while under the influence of alcohol.  Locure was driving home and not engaged in any emergency pursuit or any other official duty.  The impact of the collision sent Moss's vehicle flipping into a nearby ditch.  Locure did not render aid to Moss or the driver.  Instead, he left the scene of the accident before law enforcement or first responders arrived.  Moss was pronounced dead at the scene of the crash.

Denise Hughes, the Administrator of Moss's estate ("the estate"), brings this action against Locure in his individual capacity, asserting one federal claim pursuant to 42 U.S.C. § 1983 and three state law claims for wrongful death. Locure has moved to dismiss the sole federal claim—a substantive due process violation under the Fourteenth Amendment—asserting the nonexistence of a substantive due process right and his entitlement to qualified immunity. The Court finds that the motion is due to be denied.

## II.    STANDARD OF REVIEW

A motion to dismiss under  Federal Rules of Civil Procedure Rule 12 tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). At the motion to dismiss stage, a court accepts a plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes them "in the light most favorable to the plaintiff[]," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). To survive a motion to dismiss,

a complaint need not contain "detailed factual allegations." *Id.* Instead, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Still, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.   BACKGROUND

On January 19, 2021, at around 5:00 p.m., Edwin Moss was the passenger in a white sedan traveling westbound on U.S. Highway 80 in Tuskegee, Alabama. While on his way home, Moss's vehicle was struck by a Macon County Sheriff Office vehicle driven by Locure, who was driving in the opposite direction. (Doc. 36 at 3.) Although he was not on duty at the time of the accident, Locure was driving home after caring for his canine partner. (*Id.* at 13.)

The posted speed limit on this stretch of the highway was 25 mph. (*Id.* at 4.) At the time of the accident, Hughes alleges that Locure was traveling in excess of 70 mph and was intoxicated. (*Id.*) Although it was dark outside, Locure had not activated any lights on his vehicle, including headlights or emergency lights. (*Id.*) According to Hughes, "Locure was not responding to an emergency, nor in pursuit of a suspect, nor assisting other law enforcement personnel, nor undertaking any

conduct in furtherance of the execution of his duties as a sheriff's deputy." (*Id.*) The impact occurred when Moss's vehicle made a left hand turn in front of Locure's speeding vehicle, causing Moss's vehicle to flip several times before landing in a ditch. (*Id.* at 5.)

Hughes alleges that Locure exited his vehicle after the crash but made no effort to check on or render aid or assistance to Moss or the driver. (*Id.*)  Instead, Locure left the accident scene before law enforcement or first responders arrived. (*Id.* at 5–6.)  First responders ultimately arrived and extricated Moss from his vehicle, but he was pronounced dead at the scene of the crash. (*Id.* at 6.)

## IV.   DISCUSSION

Locure argues in his motion to dismiss that the estate fails to assert a plausible violation of Moss's substantive due process rights because a law enforcement official, such as a deputy sheriff, generally does not violate the substantive due process rights of others when causing a car accident.  Locure asserts that under Eleventh Circuit precedent, when a claim concerns a car accident involving a law enforcement officer, only the use of a vehicle with an intent to injure or cause harm would sufficiently shock the conscience to support a violation of a person's substantive due process rights.  Locure further argues that even if Moss's substantive due process rights were violated, Locure still would be entitled to qualified immunity

because he was acting within his discretionary authority at the time of the accident and the right at issue here was not clearly established.[1]

The estate contends that Locure's conduct, where he (1) was driving at a speed far above the posted speed limit, (2) for no emergency or law enforcement purpose, (3) in the dark with no lights, (4) while intoxicated, then (5) fled the accident scene (6) without attempting to render aid, and (7) while having time to deliberate his actions, sufficiently shocks the conscience to support a substantive due process violation. The estate also asserts that Locure is not entitled to qualified immunity because Locure cannot show that he was acting within his discretionary authority at the time of the accident and because it would be sufficiently clear to a reasonable

---

[1] Locure also asserts that the estate cannot show that he was acting under the color of state law if the estate asserts that he was not acting in furtherance of his duties as a sheriff's deputy. To state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *See* 42 U.S.C. § 1983. For conduct to have occurred under "the color of law," a defendant must have acted either (1) with the power of the state behind him or her, or (2) with the apparent power of the state behind him or her. *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). "[T]he 'acts of officers in the ambit of their personal pursuits are plainly excluded' from being under color of law, while the '[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.'" *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265–66 (11th Cir. 2012) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). Since Locure was alleged to have engaged in this conduct while driving home in his departmental vehicle after engaging in an official Macon County Sheriff's Office duty, the estate has pled sufficient facts to plausibly show that Locure was acting under color of state law.

The Court notes that both parties walk a tight rope as it concerns whether Locure's conduct was within the line and scope of his employment, within his discretionary authority, and under the color of law. Additional factual development is needed to determine where Locure's actual conduct fits within each issue. For now, the pleadings sufficiently show that Locure plausibly acted under color of law.

officer that Locure's conduct was unlawful and without any governmental justification.

## A. Substantive Due Process[2]

According to the Third Amended Complaint, Locure violated Moss's substantive due process right by acting "willfully, wantonly, and/or with knowledge of and deliberate indifference to the extremely great risk of harm that would likely result" from conduct that was "arbitrary" and "conscience shocking." (Doc. 36 at 14–15.) But according to Locure, the estate does not have a plausible substantive due process claim because the facts as alleged do not evidence an intent to harm. Locure also asserts that other federal courts have refused to recognize a substantive due process right in the context of motor vehicle accidents involving law enforcement officers. However, Locure fails to convince the Court that the mere existence of a badge and a sheriff's department vehicle shields him from civil liability under the facts as currently alleged.

"[T]he substantive component of the [Due Process] Clause . . . protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

---

[2] Since Locure first, and primarily, argues the nonexistence of a substantive due process right here, the Court begins with that discussion before diving into the qualified immunity abyss.

"Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as *arbitrary* or *conscience-shocking* in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (emphasis added). "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest[.]'" *Id.* (alteration in original) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

The standard used to determine whether an official's actions violate substantive due process is "narrowly interpreted and applied." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) (citation omitted). "'Only the most egregious official conduct' qualifies under this standard, so 'even intentional wrongs seldom violate the Due Process Clause.'" *Id.* (citation omitted). "Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor *must be egregious—that is, shock the conscience—at the time the government actor made the decision.*" *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

The nature of the governmental interest and the context of a state actor's underlying conduct matter greatly in determining whether there is a substantive due process violation. The Supreme Court established the backbone for substantive due process jurisprudence involving law enforcement officers, non-custodial settings,

and motor vehicle accidents in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

In *Lewis*, the Court held that a defendant officer did not violate a person's substantive

due process rights by "causing death through deliberate or reckless indifference to

life in a high-speed automobile chase aimed at apprehending a suspected offender."

523 U.S. at 836.  In so doing, the Court reversed the Ninth Circuit's holding that

deliberate indifference is the proper standard for determining due process culpability

in the context of a high-speed police chase, instead requiring a finding of a specific

intent to harm to support a substantive due process claim.  *Id.* at 838–40, 854.

In reaching its holding in *Lewis*, the Court emphasized that context matters

when determining whether law enforcement conduct violates a person's substantive

due process rights, as well as the attendant level of culpability.  *See id.* at 849–50.

The Court explained, "[d]eliberate indifference that shocks in one environment may

not be so patently egregious in another" and "the standard [of deliberate

indifference] is sensibly employed only when actual deliberation is practical."  *Id.* at

850–51.  To further illustrate this point and in looking to past case law concerning

deliberate indifference claims, the Court in *Lewis* distinguished between situations

involving the everyday conduct of prison officials and situations involving officers

responding to emergencies.  *Id.* at 850–53.  In the context of prison officials harming

an inmate, the Court noted that "liability for deliberate indifference to inmate welfare

rests upon the luxury enjoyed by prison officials of having time to make unhurried

judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Id.* at 853.  In contrast, the Court noted that "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Id.* (citation omitted).  Accordingly, the Court's holding relied largely on the context of the underlying car accident—the unforeseen, emergency circumstances of pursuing a fleeing suspect during a high-speed automobile chase, or "a course of lawless behavior for which the police were not to blame." *Id.* at 855.  In essence, *Lewis* calls for a sliding scale of culpability rooted in the nature of the governmental conduct at issue, as what "shocks the conscience" depends on the underlying situation.

Locure relies on *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020), and *Waldron v. Spicher*, 954 F.3d 1297 (11th Cir. 2020), to argue that the requisite culpability required for a substantive due process violation is an intent to harm.  According to Locure, since the estate has alleged only that he acted with deliberate indifference, the estate's claims are due to be dismissed. The Eleventh Circuit in *Hernandez* did note that it "doubt[s] that deliberate indifference can ever be 'arbitrary' or 'conscience shocking' in a non-custodial setting." 982 F.3d at 1330. However, *Hernandez* and *Waldron* each involved the conduct of officers acting in response to rapidly evolving emergency situations.  *See Hernandez*, 982 F.3d at

1330–31 (concluding that officers did not act arbitrarily or in a conscience-shocking manner during a school shooting by failing to intervene and blocking access to paramedics); *Waldron*, 954 F.3d at 1310–12 (requiring a jury to find that an officer acted with the intent to cause harm to be held liable for a substantive due process violation where, in responding to an attempted suicide, the officer prevented bystanders from giving the victim CPR).

Notably, both the *Hernandez* and *Waldron* courts cited *Lewis* for the proposition that a purpose (or intent) to cause harm must be shown to bring a viable substantive due process claim in situations requiring rapid judgments. *See Hernandez*, 982 F.3d at 1331 (citing *Lewis*, 523 U.S. at 851–53); *Waldron*, 954 F.3d at 1310 (citing *Lewis*, 523 U.S. at 852–55). Furthermore, the Eleventh Circuit noted in *Hernandez* that courts must "evaluate the totality of the circumstances" in determining whether an official's conduct is arbitrary or conscience-shocking in a constitutional sense. *Hernandez*, 982 F.3d at 1331 (citing *Waddell*, 329 F.3d at 1306).

According to the Third Amended Complaint, unlike in *Hernandez* and *Waldron*, the alleged conduct at issue here does not involve a rapid response to or judgment in an emergency situation. Instead, Locure allegedly became intoxicated—and one could reasonably infer that his becoming intoxicated took some amount of time—and made the deliberate decision to drive his vehicle at an

10

excessive speed in the darkness without lights for no legitimate, official purpose. Just because he was in his sheriff's department vehicle with the implicit or explicit permission of the Macon County Sheriff's Office and on his way home from caring for his canine companion does not necessarily mean that Locure was on any sort of official business. On the contrary, his alleged conduct, if true, most likely does not fall within the line and scope of his duty as a sheriff's deputy.

Locure refers to several other case decisions for the proposition that conduct absent the specific intent to harm cannot give rise to a substantive due process claim in a car accident case involving a law enforcement official. None are dispositive here under the facts currently alleged. For one, Locure cites *Rooney v. Watson*, 101 F.3d 1378 (11th Cir. 1996), for the proposition that a speeding, on-duty police officer does not violate a person's substantive due process rights even when the officer is not engaged in any police pursuit or emergency response. This case does not justify dismissal of the estate's claim at the present moment, as the officer's conduct in *Rooney* involved at most gross negligence. *See Rooney*, 101 F.3d at 1381. Here, in contrast, allegations of driving 50 mph over the posted speed limit while intoxicated at night with no lights easily could be found by a reasonable jury to far exceed a level of gross negligence.

Locure also cites *Barnwell v. Douglas County*, 390 F. App'x 862, 864 (11th Cir. 2010) (per curiam), an unpublished opinion, for the proposition that conduct

triggering a criminal conviction for reckless driving cannot rise to the level of a constitutional violation. However, even as Locure notes in his brief, there was a disputed issue of fact in *Barnwell* as to whether the officer was responding to an emergency call. *See* 390 F.3d at 863. Here, there is no allegation that Locure was responding to or engaged in an emergency response situation; instead, he was merely driving home. Thus, *Barnwell* does not help Locure either.

Locure's other cited district court opinions are also distinguishable from the facts as currently alleged here and thus not persuasive. Each of these cases involved law enforcement officers whose conduct had a plausible nexus with their official duties, such as a police chase or an officer in route to a law enforcement function. *Compare Wilcox v. Fenn*, No. 1:08-CV-20 (WLS), 2009 WL 10673373, at *1, *5 (M.D. Ga. Mar. 30, 2009) (no substantive due process cause of action when police officer lost control of his vehicle while speeding on the interstate on his way to participate in a large-scale program to deter speeding), *and King v. Lake Cnty.*, No. 5:17-CV-52-OC-34PRL, 2017 WL 6502395, at *2–3, *13 (M.D. Fla. Dec. 19, 2017) (dismissing substantive due process claim involving a high-speed police chase that led to the death of a third party), *with Patterson v. Walden*, No. 13-0109-WS-B, 2013 WL 3153761, at *1 (S.D. Ala. June 18, 2013) (denying motion to dismiss when police officer initiated pursuit of a vehicle and then rammed it, killing the driver). But again, according to the Third Amended Complaint, while Locure was operating

his vehicle with the permission of the sheriff's office, he was not engaged in *any* conduct in furtherance of his role as a sheriff's deputy when he violated numerous laws and caused a deadly accident while on his way home.

While the Eleventh Circuit has not expressly addressed a situation where a law enforcement officer was not engaged in a law enforcement related function at the time of the accident, the Tenth Circuit has.  In addressing a situation where a police officer caused a fatal traffic accident while using his emergency lights to run red lights on his way home, the Tenth Circuit reasoned that *Lewis* "never suggested that [specific intent] is necessary or appropriate to suggest arbitrary or conscience-shocking conduct in cases where the officer isn't pursuing any emergency or any official business at all." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1081 (10th Cir. 2015) (Gorsuch, J.).  The court supported this assertion by explaining that when a state actor is driving and not responding to an emergency, he is sitting equal with every other driver on the road and therefore has the same responsibility with respect to the rights of others.  *Id.* at 1081.  Much like the conduct alleged here, the defendant in *Browder* was driving in a dangerous manner "all for his personal pleasure, on no governmental business of any kind."  *Id.* at 1080.  The Tenth Circuit accordingly concluded that a reasonable jury could find that the officer's conduct in this context shows "a conscious contempt of the lives of others and thus a form of reckless indifference to a fundamental right." *Id.* at 1081.  The Court finds the Tenth Circuit's

13

analysis of *Lewis* persuasive and not in conflict with the Eleventh Circuit's analysis and application of *Lewis* under the unique set of facts alleged here.

When accepting the facts alleged in the Third Amended Complaint as true and resolving all reasonable inferences in favor of the estate, it is plausible that Locure's conduct is arbitrary, conscience-shocking, and demonstrative of a conscious contempt for the lives of others, and therefore violative of Moss's substantive due process rights. Locure was not engaged in any official duties aside from driving home from caring for his canine companion. He was intoxicated. He was speeding at over 50 mph above the posted speed limit. He was driving without his lights on in the darkness. As such, in several respects, he was violating the law. In fact, he has been charged criminally in Moss's death. There remains much factual development on this claim since these issues are presented at the motion to dismiss stage. The Court may come out on the opposite side of this issue at summary judgment once the actual facts have been established. But at this stage of the proceedings, the estate has stated a plausible claim for a violation of Moss's substantive due process rights.

### B. Qualified Immunity

The Court next addresses Locure's assertion of his right to qualified immunity for Moss's death. Government officials sued in their individual capacities are protected by qualified immunity unless their conduct violates "clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The Eleventh Circuit has established a two-part analysis to determine whether a defendant is entitled to qualified immunity.   The defendant must first show that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted).   The Eleventh Circuit also sometimes describes step one as requiring a showing that the defendant was "acting within the scope of his discretionary authority." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).   "If . . . the court concludes that the defendant was engaged in a discretionary function, the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Holloman*, 370 F.3d at 1264.   To do so, the plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.*

## 1.    Discretionary Authority

The first issue for consideration in the context of Locure's qualified immunity assertion is whether Locure was acting within his discretionary authority at the time of accident.   Locure says that he was.   The estate alleges that he was not.

To determine whether actions are in an individual's "discretionary authority," courts "assess whether [the acts in question] are of a type that fell within the employee's job responsibilities." *Id.* at 1265.  This inquiry is two-fold, assessing "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.*  The inquiry occurs at a high level and asks only about the action *in general*: "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266.  Allegedly unlawful intent is irrelevant: "In determining whether a defendant performed a discretionary function, our inquiry is not whether the act complained of was done for an improper purpose . . . ." *Plotkin v. United States*, 465 F. App'x 828, 831–32 (11th Cir. 2012) (per curiam).  "In other words, 'a court must ask whether the act complained of, *if done for a proper purpose*, would be within, or reasonably related to, *the outer perimeter* of an official's discretionary duties.'" *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (first emphasis added) (citation omitted).

Locure argues he was acting within his discretionary authority because he was driving home in a sheriff's department vehicle after engaging in an official duty—

16

caring for his sheriff's department canine.  The estate responds that, as set forth in the Third Amended Complaint, Locure was not on duty nor engaged in any official conduct when he was driving intoxicated at almost 50 mph in excess of the posted speed limit in the dark without his lights on.  The estate further alleges that Locure's conduct was unlawful, improper and "outside the line and scope of his duties as a deputy sheriff."  (Doc. 36 at 15.)

Treating the facts alleged in the Third Amended Complaint as true—which the Court must at the motion to dismiss stage—the Court concludes that Locure has sufficiently shown that he was acting within his discretionary authority—although it is a close call.  The conduct at issue must be defined at a broad level of generality and regardless of whether it was committed in an unconstitutional manner for purposes of defining discretionary authority, *see Holloman*, 370 F.3d at 1266, and the facts here show that Locure was driving home after engaging in official duties. For now, Locure has met his burden to show that he was acting within his discretionary authority.

## 2.    Clearly Established

The Court also addresses the issue of whether Moss's substantive due process right—as already discussed—was clearly established.   Locure says it was not. According to Locure, "[t]here was nothing in the legal landscape that supports such a cause of action in the non-custodial context, and certainly not in the context of a

fortuitous motor vehicle accident involving strangers." (Doc. 38 at 28.) This is a fundamental misreading of the Third Amended Complaint and too narrowly construes the pertinent inquiry.

Once the defendant has made his showing of a discretionary function, the burden shifts to the plaintiff to show that "that the defendant violated a constitutional right" and that the right violated was "clearly established."[3] *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). The Eleventh Circuit has identified three different ways a plaintiff can show that officials had fair warning of a clearly established right. First, a plaintiff can "show that a materially similar case has already been decided." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). "This category consists of cases where judicial precedents are tied to particularized facts." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation omitted). In determining whether a right is clearly established under this prong, a court looks to "judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state." *Griffin Indus.*, 496 F.3d at 1199 n.6. Second, a plaintiff can "also show that a broader, clearly established principle should control the novel facts" of

---

[3] Courts may consider these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

the particular situation at issue. *Mercado*, 407 F.3d at 1159. "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Loftus*, 690 F.3d at 1205 (alteration in original) (citation omitted). Put another way, "in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citation omitted). Third, a plaintiff could show that her case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159.

The estate does not point to any judicial cases as giving fair warning that Locure's alleged conduct would violate substantive due process. Instead, it proceeds merely upon the factual circumstances of Locure's conduct and Moss's death. The Third Amended Complaint asserts that Locure drove his sheriff's department vehicle while intoxicated at an excessive rate of speed in the dark with no lights while on his way home and while engaged in no official law enforcement business. The Third Amended Complaint evidences no legitimate purpose behind this unlawful conduct (driving while intoxicated, driving in excess of the speed limit, and driving in the darkness without lights), particularly under the color of law. Furthermore, under the contextual approach articulated by *Lewis*, every reasonable law enforcement official would know that this conduct—as unlawful and

unjustifiable as it was—is so facially egregious and conscious shocking that it violates clearly established law protecting the life interests of law-abiding persons.

Perhaps the Tenth Circuit said it best when concluding that qualified immunity was due to be denied in *Browder*:

> After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt.

787 F.3d at 1082–83.

The Third Amended Complaint presents particularly egregious and obviously unlawful conduct that took someone's life at the hands of a public official for no law enforcement-related purpose. Locure has not shown his entitlement to qualified immunity at the present stage. Accordingly, the estate's substantive due process claim will proceed, at least for the moment.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant Darian K. Locure's Motion to Dismiss the Third Amended Complaint (Doc. 37) is DENIED.

DONE, on this the 10th day of March, 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE